# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RICHARD A. HAYES, )
)
        Plaintiff, )
)
v. ) Case No. CIV-12-495-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Richard A. Hayes requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 18, 1958, and was fifty-three years old at the time of the second administrative hearing (Tr. 44, 68). He has a high school education and no past relevant work (Tr. 28). The claimant alleges inability to work since October 1, 2002 because of left shoulder and foot injuries, nerve damage, and depression (Tr. 252).

## Procedural History

The claimant applied for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 3, 2007 (Tr. 107). His application was denied. Following an administrative hearing, ALJ Deborah L. Rose found that the claimant was not disabled in a written opinion dated February 3, 2010 (Tr. 107-16). The Appeals Council remanded the case to the ALJ to: (i) respond to comments submitted by the claimant's attorney; (ii) evaluate the severity of claimant's neuropathy; (iii) evaluate the claimant's subjective complaints in accordance with SSR 96-7p; (iv) obtain medical evidence from a medical expert to clarify the nature and severity of the claimant's physical and mental impairments; and (v) obtain supplemental evidence from a vocational expert (Tr. 124). ALJ Osly Deramus conducted a second

administrative hearing and found that the claimant was not disabled in a written opinion dated August 8, 2011 (Tr. 15-29). The Appeals Council considered additional evidence submitted by the claimant but found it did not alter the outcome of the ALJ's opinion. Thus, the ALJ's August 8, 2011 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform less than the full range of light work, *i. e.*, that he could lift and carry up to 20 pounds occasionally or 10 pounds frequently, sit for up to six hours and stand or walk for up to six hours with normal breaks, with the following limitations: (i) frequent stooping, climbing stairs, grasping and fingering bilaterally, reaching overhead, operating a motor vehicle, and using foot pedals; (ii) occasional crouching, crawling, kneeling, and climbing ladders; (iii) frequent exposure to temperature extremes, pulmonary irritants, and dangerous moving machinery; (iv) understanding, remembering, and carrying out simple and detailed instructions; and (v) incidental contact with the public and coworkers (Tr. 19). The ALJ concluded that even though the claimant had no past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hand packer (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze his mental impairments, (ii) by failing to properly evaluate his physical limitations, (iii) by

failing to properly analyze his credibility, and (iv) by failing to make proper step five findings. None of these contentions have merit, and the decision of the Commissioner must therefore be affirmed.

The ALJ found the claimant's depression, panic disorder, chronic pain disorder, hypertension, degenerative disc disease and peripheral neuropathy all were severe impairments (Tr. 17). State agency physician Dr. Jimmie Taylor, M.D. examined the claimant on June 25, 2007, for pain in his left arm, feet, right thigh, numbness in his left foot, pain in the middle of his back, and shortness of breath, which all began following a motorcycle accident in October 2002 (Tr. 338). Dr. Taylor noted that the claimant had decreased range of motion in his neck, left shoulder, and back, and his impression was that the claimant suffered from degenerative joint disease in his neck, left back, and left shoulder, generalized pain to the touch, generalized anxiety disorder, and possible generalized neuropathy (Tr. 340). State agency physician Dr. Luther Woodcock, M.D. reviewed the claimant's records and completed a Physical Residual Functional Capacity Assessment, finding the claimant could lift/carry up to ten pounds frequently and up to twenty pounds occasionally, and stand/walk/sit for six hours in an eight-hour workday, but had limited ability to reach in all directions, including overhead (Tr. 351-353).

On October 28, 2009, Dr. Beau Jennings examined the claimant and diagnosed him with chronic pain and malingering (Tr. 416). He found the claimant had normal range of motion, but his efforts were poor, and that the claimant reported he could not walk heel/toe but then was actually able to do so (Tr. 416). On August 10, 2010, Dr.

Barbara Felkins completed a medical interrogatory related to the claimant's physical impairments. She indicated that the claimant's impairments were major depression, pain disorder, panic disorder, hypertension, degenerative disc disease of the cervical spine, peripheral neuropathy possibly due to alcohol abuse, and chronic pain with little to no objective evidence for etiology (Tr. 463). She noted that the doctors differed on whether the evidence supported the pain or indicated he was malingering, and that there was little to no longitudinal treatment (Tr. 465). She assessed him with the ability to perform light work, but occasional left hand overhead reaching, frequent use of foot controls and occasional climbing of ladders/scaffolds, kneeling, crouching or crawling (Tr. 466-471).

State agency physician Dr. Diane Brandmiller, Ph.D. examined the claimant and completed a Mental Status Examination on June 30, 2007 (Tr. 346-49). The claimant related that he started having problems with memory and concentration following his motorcycle accident, and had experienced panic attacks since 1991 (Tr. 346). Dr. Brandmiller diagnosed him with panic disorder without agoraphobia and assigned a GAF of 57 (Tr. 349). Dr. Brandmiller's impressions were that the claimant "would be able to understand and carry out simple instructions" and "would probably be able to understand and carry out complex instructions if it were written down and if there was a diagram if it involved putting together something or taking something apart" (Tr. 349). Denise LeGrand, Psy.D., examined the claimant and performed a psychological assessment on July 13, 2009 (Tr. 385-94). A Beck Depression inventory indicated moderate depression, with indications that he tended to develop physical problems with stress and may use his

physical problems as a way to manipulate others to meet his emotional needs. Overall, the inventory indicated a level of depression and anxiety that was higher than he actually reported, and further "indicate that he could be having some mild depression-related psychotic symptoms, even though he denied any unusual perception experiences" (Tr. 388). She estimated he had a low average IQ, and her diagnostic impression was pain disorder due to general medical condition, moderate major depressive disorder, and panic disorder without agoraphobia, as well as a GAF of 50 (Tr. 389). She concluded by saying, "From a psychological standpoint, based on his reported symptoms, history, and performance on this exam, his ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low average" (Tr. 390). She indicated that he had some mild and moderate limitations, but no marked limitations (Tr. 392-394).

State agency physician Dr. Cynthia Kampschaefer, Psy.D., reviewed the medical records and completed a Psychiatric Review Technique (PRT) form on July 25, 2007. She found the claimant's symptoms fell under the umbrella of anxiety-related disorders, but his mental impairments were not severe (Tr. 358). State agency physician Patricia Walz, Ph.D., conducted another mental diagnostic evaluation on October 14, 2009 (Tr. 406-415). Based on her exam, she believed he had a low average range of intellectual functioning, and diagnosed him with depression related to medical condition (chronic pain), panic disorder without agoraphobia, and rule out somatoform disorder, with a GAF range of 45-50 (Tr. 410). She noted he had some difficulty concentrating and that his

speech "was a bit run on in nature and pressured," but that he persisted well (Tr. 411). In addition to other mild and moderate limitations, she indicated that he had marked limitations in dealing with work stresses, carrying out detailed or complex instructions, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, performing activities within a schedule, and maintaining regular attendance, as well as completing a normal workday, performing at a consistent pace, performing without an unreasonable number or length of rest periods, avoiding undue construction of interests, demonstrating reliability, behaving in an emotionally stable manner, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness (Tr. 412-414).

Evidence submitted to the Appeals Council included treatment records and a physical RFC assessment from Dr. George Howell at the Wellness Clinic of Roland. Dr. Howell treated the claimant for his neck and back pain, noting that the claimant endorsed a pain level of at least 6 (Tr. 498). On the RFC evaluation, he indicated that the claimant could sit/stand/walk fifteen minutes at a time, for a total of two hours in an eight-hour workday, that he needed an assistive device to stand, walk, and balance and would need at a minimum hourly rest breaks as well as a sit/stand option (Tr. 504). He indicated that the claimant could lift five pounds frequently and ten pounds occasionally, and that he could only occasionally carry up to ten pounds, was limited in operating foot controls, and his legs needed to be elevated (Tr. 505). As for his shoulder and arms, he could only occasionally reach, never work overhead, and rarely push/pull, work in extended

position, and work above shoulder level (Tr. 505). Further, he could only occasionally grasp and perform fine manipulation and could rarely bend, stoop, balance, and climb stairs/ramps, and never squat, crawl, kneel, crouch, or climb ladders/scaffolds (Tr. 506). In support of his findings, he cited severe musculoskeletal impairment without anticipation of significant impairment, and remarked that he anticipated continued progressive deterioration (Tr. 506).

In his written opinion, the ALJ summarized the medical evidence in great detail, including the claimant's hearing testimony. He discussed Dr. Jennings' notes indicating that the claimant appeared to be malingering due to inauthentic pain expressions, as well as those from Dr. Felkins and Dr. George Tompkins. He summarized evidence from the reports of Dr. Brandmiller, Dr. LaGrand, and Dr. Walz. He noted that Dr. Walz and Dr. LeGrand had similar findings but drew "vastly different" conclusions (Tr. 23), and found that Dr. LeGrand's conclusions were better supported by the evidence. He found that Dr. Walz demonstrated inconsistencies when she stated he had some trouble concentrating but could persist, and later indicated that he had marked limitations in concentration, ability to carry out complex instructions, and to perform activities within a schedule; and she also described his social skills as "slightly impaired by his dramatic presentation" but indicated he had marked limitations in behaving in an emotionally stable manner and in maintaining socially appropriate behavior (Tr. 23). The ALJ then found that Dr. LeGrand demonstrated no similar inconsistencies because a diagnosis of moderate depression secondary to physical problems was consistent with the evidence, and his use of physical

problems as manipulation could be related to a malingering assessment by the claimant's doctor (Tr. 23-24). As to the new evidence, the Appeals Council summarized it as well, noting the claimant's generally conservative course of treatment and the reliance on 2009 x-rays with no additional studies through May 2011, and further stated that Dr. Howell's treatment notes contained few clinical findings, and did not refer to worsening compared to the earlier evidence in the hearing decision, in contrast to other treating and examining sources. The Appeals Council gave it little weight under Soc. Sec. Rul. 96-2p, because the clinical notes showed no abnormalities that conformed to the restrictions indicated and were inconsistent with the other evidence (Tr. 2).

The claimant's first two contentions are that the ALJ disregarded evidence of his mental impairments and did not accurately evaluate his physical impairments. As to his mental impairments, the claimant asserts that the ALJ's assessed psychological limitations are "woefully inadequate" because he gave great weight to a state reviewing physician who found he had a nonsevere mental impairment, he did not explicitly state how much weight he was giving to Dr. Felkins' opinion (but see Tr. 25), and he inappropriately gave more weight to Dr. LeGrand over Dr. Walz. As to his physical limitations, he argues that the ALJ's findings reflect picking and choosing and did not match the medical evidence because he improperly relied on Dr. Jennings's report and Dr. Howell's opinion should be incorporated in the RFC, the ALJ ignored evidence related to the claimant's neuropathy, and the ALJ improperly used Dr. Felkins's report. But the ALJ provided a detailed discussion of the relevant evidence in the record, and his

opinion clearly indicates that he adequately considered the medical evidence of record in reaching his conclusions regarding the claimant's RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir.2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

Furthermore, the evidence presented by the claimant after the administrative hearing *does* qualify as new and material evidence under C.F.R. § 404.970(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, but the

Appeals Council *did consider* it and furthermore properly analyzed it in accordance with the proper standards.

The claimant next contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" (Tr. 18, 21), and that the claimant was not "a particularly credible witness." (Tr. 22, 26). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the

determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records reflected only moderate physical and mental limitations during the relevant time frame; (ii) the claimant had a sporadic work history prior to the alleged onset date, and none after 1986; (iii) he demonstrated a normal gait and no problem squatting, as well as the ability to heel/toe walk, despite claims that he could only lie around his house; x-rays revealed no acute bony abnormality in the lumbar or thoracic spine, left shoulder, left or right foot, or hip, despite testimony he could only walk 10-15 feet and stand for five minutes; and (iv) the claimant appeared, at the very least, to exaggerate pain symptoms when objective testing revealed only mild degenerative disc/joint disease (Tr. 19-28). *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) ("[T]he ALJ did not err in considering that plaintiff quit working several years before the alleged onset of her disability. Nor did he place undue emphasis on this factor, but considered it as one of several factors bearing on plaintiff's credibility."). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's final contention is that he cannot perform the jobs identified by the ALJ because he cannot perform light work. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's fourth contention is therefore without merit.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma